The TIMKEN COMPANY, Plaintiff,

v.

Donald REGAN, Individually and as Secretary of the Treasury, William Von Raab, Individually and as Commissioner of Customs, Richard R. Rosettie, Individually and as Director, Duty Assessment Division, United States Customs Service, Peter F. Gonzalez, Individually and as District Director, United States Customs Service, Mary Riggs, Individually and as Import Specialist, Commodity Team # 10, United States Customs Service, Malcolm Baldrige, Individually and as Secretary of Commerce, Lionel H. Olmer, Individually and as Under Secretary for International Trade Administration, United States Department of Commerce, Larry Brady, Individually and as Assistant Secretary for International Trade Administration, United States Department of Commerce, Gary N. Horlick, Individually and as Deputy Assistant Secretary for Import Administration, United States Department of Commerce, Leonard M. Shambon, Individually and as Director, Office of Compliance, International Trade Administration, United States Department of Commerce, Frank Brennan, Individually and as Director, Antidumping Order Compliance Division, International Trade Administration, United States Department of Commerce, J. Linnea Bucher, Individually and as Compliance Officer, Antidumping Order Compliance Division, International Trade Administration, United States Department of Commerce, Defendants,

and

NTN Bearing Corporation of America, Intervenor.

Court No. 81–12–01749.

United States Court of International Trade.

Oct. 27, 1982.

48

Eugene L. Stewart, and Daniel G. Rooney, Washington, D.C., for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Director, Commercial Litigation Branch (Velta A. Melnbrencis, New York City, on brief), for defendants.

Barnes, Richardson & Colburn, Chicago, Ill. (Robert E. Burke and Mark S. Zolno, Chicago, Ill., on brief), for intervenor NTN Bearing Corp. of America.

*Opinion and Order*

MALETZ, Judge:

Plaintiff has filed a complaint alleging that the United States Customs Service unlawfully liquidated entries of tapered roller bearings subject to an antidumping duty order. It seeks declaratory, mandatory and injunctive relief, as well as money damages from the various Government defendants. The matter comes before the court on (1) defendants' and intervenor's motions to dismiss counts five and six of the complaint; (2) cross-motions by the parties for summa-

ry judgment on counts one through four of the complaint; and (3) defendants' motion for partial suspension of the action pending resolution of a companion case filed in this court, *The Timken Co. v. Baldrige, et al.,* No. 82–6–00890.

## Background

Plaintiff The Timken Company (Timken) is an American manufacturer of tapered roller bearings (roller bearings). Named as defendants are twelve Commerce and Treasury Department employees who are being sued in their official and individual capacities. Intervenor NTN Bearing Corporation of America (NBCA) is the American sales subsidiary of NTN Toyo Bearing Co., Ltd. (NTN), a Japanese manufacturer of roller bearings.

In 1973 Timken filed an antidumping complaint with the Secretary of the Treasury, following which the Secretary determined that Japanese-manufactured roller bearings from four firms (including NTN) were being sold at less than fair value. The United States International Trade Commission issued an industry injury determination in 1975. On August 18, 1976, Treasury published a finding of dumping covering certain roller bearings from Japan.

On January 30, 1979, pursuant to section 516(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516(a) (1976), Timken filed three American manufacturer petitions with the Customs Service. One was to ascertain the amount of antidumping duties being assessed. Another contended that antidumping duties were not being assessed on roller bearings from Japan. The third asserted that the appraised values for the roller bearings were too low. Following a letter from the International Trade Administration of the Department of Commerce (ITA), Treasury's successor, advising what the amount of antidumping duty was and that no further action would be taken on its petitions, on May 9, 1980 Timken filed a Notice of Desire to Contest the determination of the amount of antidumping duties to be assessed.

Later, by letter dated June 24, 1980, the Customs Service notified Timken that no appraised value existed for the roller bearings and that no liquidation of NTN's entries had occurred since at least 1972. Based in part on this letter Timken withdrew its Notice of Desire to Contest. It was later discovered that the Customs Service was in error in its June 24, 1980 letter. In fact, the Customs Service had issued lists (referred to as "master lists" by the parties) on April 13 and May 14, 1979, covering 370 entries of roller bearings for the period April 1, 1974 through March 31, 1978. Those master lists directed that NTN roller bearings be appraised and liquidated free of antidumping duty liability. Shortly thereafter, on June 28, 1979, the Customs Service appraised and liquidated 98 of the 370 entries. Liquidation of the 272 remaining entries was suspended pending resolution of an appraisement dispute. These 272 entries were eventually liquidated by Customs beginning in February 1981 and continuing thereafter.

With the enactment of the Trade Agreements Act of 1979 several of the administrative functions being performed by the Treasury Department were transferred to the Commerce Department. Aware of this impending transfer, on August 11 and November 25, 1980 Customs Service headquarters directed all Customs officers to suspend all liquidations of entries covered by a pre-1980 master list until further notice. A follow-up reminder was issued on March 25, 1981. The ostensible reason for the suspension was to give the Commerce Department an opportunity to determine whether pre-Trade Agreements Act entries would be subject to administrative review under section 751(a) of that Act. Thus, whether through inadvertence or mistake it is undisputed that the liquidation beginning in February 1981 of the 272 pre-April 1978 entries took place contrary to internal Customs Service instructions.

These facts describe the relevant events affecting roller bearings entered prior to April 1, 1978. As for entries after April 1978, a master list was issued on December 11, 1980 (approximately one year after the

effective date of the Trade Agreements Act of 1979) covering roller bearing entries from April 1, 1978 through August 30, 1979. Despite instructions from Customs Service headquarters that use of that master list and resulting liquidations should be suspended until further notice, 186 NTN roller bearing entries were nevertheless liquidated.

## The Complaint

Against this background, Timken filed a six-count complaint. Count one seeks a declaration that all roller bearing entries unliquidated as of January 1, 1980 are subject to administrative review under section 751(a) of the Trade Agreements Act of 1979, 19 U.S.C. § 1675(a), and that all liquidations of roller bearings since January 1, 1980 are void because not submitted to section 751(a) review.

Count two seeks to enjoin the ongoing liquidation of roller bearing entries imported and sold by NBCA from April 1, 1978 through November 14, 1979 until after the section 751(a) review is completed. Since the filing of the complaint the administrative review has been completed and is the subject of judicial review in a companion case, *The Timken Co. v. Baldrige.*

Count three seeks a declaration that the liquidations during 1979 of entries imported by NBCA after April 1, 1978 were unlawful (1) because they were contrary to Customs Service instructions and (2) because the entries were not submitted to section 751(a) review.

Count four seeks a declaration that all liquidations since August 1980 of pre-April 1978 entries are null and void (1) because they were contrary to Customs Service instructions and (2) because the entries were not submitted to section 751 review.

Count five seeks a declaration that the liquidation of pre-April 1978 entries during 1979 is null and void (1) because Timken detrimentally relied on information from the Customs Service that such liquidations had not taken place when in fact they had and (2) because these entries were not submitted to section 751 review.

Counts one, three, four and five also request a mandate ordering the Customs Service to return all the complained of liquidations to suspended status.

Finally, count six requests monetary relief, together with attorneys' fees and costs, to compensate Timken for damages allegedly resulting from these liquidations.

## Opinion

### I

We consider first Timken's request for declaratory and equitable relief to set aside the liquidation of roller bearing entries prior to April 1, 1978. It advances three grounds for such relief. First, Timken argues that it would have been able to obtain meaningful administrative and judicial relief but for the fact that it had been misinformed by the Customs Service letter of June 24, 1980. Second, it contends that this liquidation was in direct contravention of notices and instructions from Customs Service headquarters. Third, it asserts that the liquidation of those entries was void *ab initio* because they were not subjected to review under section 751(a) of the Trade Agreements Act of 1979 (the Act), 19 U.S.C. § 1675(a).

While not directly addressing themselves to Timken's first argument, other than to argue that Timken could not have been misled by the June 24, 1980 letter, defendants and NBCA maintain that section 751(a) review does not apply to entries which were on master lists before the effective date of the Act, regardless of whether liquidation had been completed as of that date. Their rationale is that master lists, as the final appraisement instructions issued by the Customs Service for imposing antidumping duties, were not intended by Congress to be administratively disturbed or reviewed following passage of the Act.

Taking Timken's last contention first, what is germane are the four administrative steps which preceded issuance of the pre-April 1978 master lists: (1) a preliminary less-than-fair-value determination and order directing the withholding of appraise-

ment of entries of Japanese roller bearings on June 5, 1974; (2) a final affirmative less-than-fair-value determination on September 6, 1974; (3) an affirmative determination by the International Trade Commission on January 23, 1975 that such less-than-fair-value sales were likely to cause material injury to the domestic roller bearing industry; and (4) the publication of a dumping finding on August 18, 1976. With the completion of these four administrative steps master lists were then issued which instructed Customs Service field personnel whether and at what rate antidumping duties were to be assessed on Japanese roller bearings.

■ An examination of the transitional rules and legislative history of the Act supports and confirms defendants' and NBCA's position that section 751(a) review does not apply to entries which were on master lists issued before the effective date of the Act. Section 1002(b)(3) of the Act, 93 Stat. 307, provides as follows:

(b) TRANSITIONAL RULES.—

\* \* \* \* \* \*

(3) CERTAIN COUNTERVAILING AND ANTIDUMPING DUTY ASSESSMENTS.—The amendments made by this title shall apply with respect to the review of the assessment of, or failure to assess, any countervailing duty or antidumping duty on entries subject to a countervailing duty order or antidumping finding if the assessment is made after the effective date. If no assessment of such duty had been made before the effective date that could serve the party seeking review as the basis of a review of the underlying determination, made by the Secretary of the Treasury or the International Trade Commission before the effective date, on which such order, finding, or lack thereof is based, then the underlying determination shall be subject to review in accordance with the law in effect on the day before the effective date.

The legislative history is also illuminating. The Senate Finance Committee reported that:

*Transitional rules.*—Generally, the bill would provide for judicial review of pending cases, and cases which were far advanced in the administrative process before the effective date, to proceed as if the bill had not been enacted into law. . . .

With respect to the assessment of or the failure to assess a countervailing or antidumping duty on entries subject to a countervailing duty order or antidumping finding, title X, according to subsection 1002(b)(3), would apply if the assessment is made or the failure to assess occurs after the effective date.

S.Rep. No. 249, 96th Cong., 1st Sess. 255 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 641.

The transitional rules and accompanying legislative history are plainly at odds with Timken's contention that section 751(a) review is applicable here. The master lists covering entries of roller bearings before April 1978 represent the assessment of antidumping duties on entries subject to an antidumping finding. Those lists were issued before the effective date of the Act. In addition, these proceedings were far advanced in the administrative process before the Trade Agreements Act of 1979 went into effect. They were not at a preliminary stage, but rather were at the final stage of the administrative process.

In short, 751(a) review is not applicable to the pre-April 1978 entries. Accordingly, counts one, two and five of Timken's complaint, to the extent they seek invalidation of liquidation of entries subject to a master list predating the Act, are dismissed.

II

■ Timken further complains that the liquidation of pre-April 1978 roller bearing entries which were the subject of outstanding antidumping duty master lists was in contravention of instructions from Customs Service headquarters to suspend all such liquidations. Thus, in count four of its complaint Timken states generally that the Chicago Customs District's failure to follow

Customs headquarters' instructions was "contrary to law," but without citation of any statute or regulation which was violated or how Timken was prejudiced or injured as a consequence.

It is basic that procedural irregularities by an administrative agency are not per se prejudicial. *NLRB v. Seine & Line Fishermen's Union*, 374 F.2d 974, 981 (9th Cir.), *cert. denied sub nom. Biazebich v. NLRB*, 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261 (1967); 5 U.S.C. § 706. Material prejudice to the interests of the complaining party must clearly appear. *NLRB v. Selwyn Shoe Mfg. Corp.*, 428 F.2d 217, 224 (8th Cir.1970). Timken alleges no such prejudice. Inasmuch as the court has concluded that section 751(a) review is not applicable to pre-April 1978 entries, the liquidation of those entries in contravention of instructions to the contrary amounts to harmless error. For that reason, count four of Timken's complaint is dismissed.

### III

■ In addition to the allegation that the liquidation of pre-April 1978 entries violated section 751(a) of the Act, the only other specific allegation that the liquidations were in contravention of any of Timken's rights is contained in count five of its complaint, that being its right to protest pursuant to 19 U.S.C. § 1516.

In count five Timken complains that it was misled to its prejudice by the Customs Service letter of June 24, 1980 informing Timken that no liquidations had occurred since 1972. In fact, some 98 liquidations had been completed from July through December 1979. Before receiving the June 1980 letter Timken filed an American manufacturer's petition on January 30, 1979, pursuant to 19 U.S.C. § 1516(a). On April 14, 1980 Timken received a letter from the ITA, informing Timken in part that no further action would be taken on its petition inasmuch as master lists covering the roller bearings were current. On May 9, 1980, pursuant to 19 U.S.C. § 1516(c), Timken filed a Notice of its Desire to Contest the determination of the amount of antidumping duties to be assessed on the basis of the published master lists. This Notice was withdrawn by Timken based in part on receipt of the June 1980 letter.

The question presented is whether issuance of the June 1980 letter materially prejudiced Timken. As noted above, not every mistake or error committed by an administrative agency gives rise to a claim of prejudicial error. *NLRB v. Seine & Line Fishermen's Union*. The Administrative Procedure Act likewise instructs courts when reviewing agency action to take "due account ... of the rule of prejudicial error." 5 U.S.C. § 706 (1976). The court is unable to discern any error which resulted in material prejudice to Timken's legal rights or interests. The remedies granted an American manufacturer under the provisions of 19 U.S.C. § 1516, which were in effect at the time Timken filed its petition, were exclusively prospective in nature. For an American manufacturer's petition filed under 19 U.S.C. § 1516 may only reach merchandise which is entered for consumption or withdrawn from warehouse for consumption *after* a judicial decision is entered sustaining the petition. The language of 19 U.S.C. § 1516(e) is neither vague nor ambiguous:

(e) Notwithstanding the filing of an action pursuant to section 2632 of Title 28, merchandise of the character covered by the published decision of the Secretary (when entered for consumption or withdrawn from warehouse for consumption on or before the date of publication of a decision of the United States Customs Court or of the United States Court of Customs and Patent Appeals, not in harmony with the published decision of the Secretary) shall be appraised or classified, or both, and the entries liquidated, in accordance with the decision of the Secretary and, except as otherwise provided in this chapter, the final liquidations of these entries shall be conclusive upon all parties.

It is thus clear *a fortiori* that no American manufacturer's petition can reach entries which predate the filing of that petition. Even if Timken had ultimately pre-

vailed in proceedings before this court or the appellate court, antidumping duties ensuing as a consequence thereof would only have prospective application, i.e., only cover roller bearings from Japan entered for consumption or withdrawn from warehouse for consumption after the date of publication of the court decision. *Flintkote Co. v. United States,* 82 Cust.Ct. 305, C.R.D. 79–5, 467 F.Supp. 626 (1979). Inasmuch as all the 1979 liquidations were of entries made before April 1978, it would do violence to the congressional scheme to hold that liquidation of entries which predated Timken's section 1516 petition could be voided. As the Second Circuit succinctly observed in *Flintkote v. Blumenthal,* 596 F.2d 51, 55 (1979), in upholding the denial of injunctive relief in a companion case to *Flintkote v. United States,* "it is clear beyond peradventure that so far as 19 U.S.C. § 1516 is concerned, relief to an American manufacturer claiming to be aggrieved by dumping is prospective only." Thus, while it is admitted that the June 1980 letter was in error,

> [i]t is settled that agency action will not be upset in the event of a harmless procedural error.... This is especially true where the error was harmless because there was no resulting prejudice....

*Dodson v. Nat'l Transp. Safety Board,* 644 F.2d 647, 652 (7th Cir.1981) (citations omitted). *Accord McCulloch Interstate Gas Corp. v. FPC,* 536 F.2d 910, 913 (10th Cir. 1976).

There being no resulting prejudice to Timken from the June 1980 letter, count five is dismissed.[1]

## IV

We consider finally the validity of the liquidation of post-April 1, 1978 entries.

Those entries are presently the subject of the companion case, *The Timken Co. v. Baldrige.* In that case, Timken challenges a Commerce Department final determination that NTN roller bearings entered from April 1978 through November 1979 be liquidated free of antidumping duties. Given that situation, a decision in the companion case will have a direct bearing on the question of the propriety of the liquidation of the 186 post-April 1978 roller bearing entries. In the interest of conserving judicial resources, a stay is clearly warranted. As Justice Cardozo observed in *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Accordingly, the court will stay further proceedings in this action and suspend resolution of the question whether the liquidation of these 186 entries was unlawful until final disposition of the companion case.[2]

### Summary

For the foregoing reasons, count one of Timken's complaint is dismissed to the extent it seeks a declaration and mandate affecting the liquidation of pre-April 1978 roller bearing entries. Disposition of the remainder of count one is stayed pending final resolution of *The Timken Co. v. Baldrige.*

Disposition of counts two and three is stayed pending final resolution of *The Timken Co. v. Baldrige.*

1. To the extent that count five also complains of a failure to submit pre-April 1978 entries to section 751(a) review, the court's conclusion that that section is inapplicable to pre-April 1978 entries disposes of this aspect of count five.

2. Defendants have also moved to dismiss the complaint insofar as it seeks declaratory and injunctive relief against defendants in their individual capacity. To the extent that disposition of this action is stayed pending final resolution of the companion case, a decision on this aspect of defendants' motion is likewise suspended.

Defendants further move to dismiss count six of the complaint which seeks money damages. To the extent that Timken's cause of action under count six has not been rendered moot by the partial dismissal of its complaint, disposition of count six, along with Timken's request for attorneys' fees and costs, is suspended pending final resolution of the companion case.

Counts four and five are dismissed in their entirety.

Disposition of count six, to the extent it has not been rendered moot by the dismissal of counts one, four and five, is stayed pending final resolution of *The Timken Co. v. Baldrige.*