**NSK LTD. and NSK Corporation, Plaintiffs,**

**v.**

**UNITED STATES and the United States Department of Commerce, Defendants,**

**The Timken Company, Defendant–Intervenor.**

**Court No. 90–06–00309.**

United States Court of International Trade.

May 21, 1992.

See also 788 F.Supp. 1228, 778 F.Supp. 531.

Donohue and Donohue, Joseph F. Donohue, Jr. and Kathleen C. Inguaggiato, New York City, for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, of counsel, Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendants.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Amy S. Dwyer, Washington, D.C., for defendant-intervenor.

TSOUCALAS, Judge:

This action, brought by NSK Ltd. and NSK Corporation ("NSK"), challenges the final results of the Department of Commerce, International Trade Administration ("ITA" or "Commerce"), in an administrative review of antidumping ·findings for *Tapered Roller Bearings Four Inches or Less in Outside Diameter From Japan; Final Results of Antidumping Duty Administrative Review* ("Final Results"), 55 Fed.Reg. 22,369 (1990), for NSK for the period of April 1, 1974 through July 31, 1980. The investigation by Commerce likewise covered tapered roller bearings ("TRBs") for Koyo Seiko Co., Ltd. and

Koyo Corporation of U.S.A. ("Koyo"). *See Koyo Seiko Co. v. United States,* 16 CIT ——, 796 F.Supp. 517 (1992).

On October 31, 1973, Timken filed a petition requesting the imposition of antidumping duties on TRBs from Japan. *Tapered Roller Bearings From Japan; Antidumping Proceeding Notice,* 38 Fed.Reg. 33,408 (1973). On June 5, 1974, Treasury published a notice to withhold appraisement of NSK entries of the subject merchandise, made on or after June 5, 1974. *Tapered Roller Bearings From Japan—Antidumping; Withholding of Appraisement Notice,* 39 Fed.Reg. 19,969 (1974). A determination of sales at less than fair value was published on September 6, 1974. *Tapered Roller Bearings From Japan—Antidumping; Determination of Sales at Less Than Fair Value,* 39 Fed.Reg. 32,337 (1974).

Master lists were issued on or about May 18, 1978, for NSK entries covering the period May 1, 1974 through July 31, 1976. Administrative Record ("AR") (Pub.) Doc. 50 (Attachment 1). Master lists for the period August 1, 1976 through December 31, 1976 were circulated on or about May 31, 1979. AR (Conf.) Doc. 33 (Attachment 2). Master lists for the period January 1, 1977 through March 31, 1978 were circulated on or about May 23, 1979, and amended July 30, 1979. AR (Conf.) Doc. 38 (Attachment 3).

Effective January 2, 1980, the authority for administering the antidumping law was transferred from Treasury to the United States Department of Commerce by Exec. Order No. 12,188, 3 C.F.R. 131 (1980). Subsequently, Commerce began to conduct administrative reviews of unliquidated entries pursuant to 19 U.S.C. § 1675 (1980).

On or about August 12, 1980, Commerce requested information covering NSK's sales for the period May 1, 1979 through July 31, 1980. During 1981–84 counsel for NSK made several inquiries of Commerce concerning the progress being made with respect to the completion of NSK entries. *See* AR (Pub.) Docs. 145, 152, 153, 216 and 227. During this period, on September 1, 1981, Commerce published preliminary re-

sults for forty known firms covered by the 1976 dumping finding; however, NSK was not included. *Tapered Roller Bearings and Certain Components Thereof From Japan; Preliminary Results of Administrative Review and Tentative Revocation in Part of Antidumping Finding* ("TRBs From Japan I"), 46 Fed.Reg. 43,864 (1981). In addition, preliminary results for NTN (another large Japanese manufacturer) were published on February 27, 1981. *Tapered Roller Bearings and Certain Components Thereof From Japan; Preliminary Results of Administrative Review of Antidumping Finding; NTN Toyo Bearing Co., Ltd. and NTN Bearing Corporation of America; and Tentative Determination to Revoke in Part* ("TRBs From Japan II"), 46 Fed.Reg. 14,371 (1981).

On March 9, 1984, Commerce issued final results for forty Japanese exporters subject to the September 1, 1981 preliminary results, relying on Treasury master lists as "best information available." *Tapered Roller Bearings and Certain Components Thereof From Japan; Final Results of Administrative Review of Antidumping Finding* ("TRBs From Japan III"), 49 Fed. Reg. 8,976 (1984). NSK was not included in these results.

On July 9, 1986, the ITA initiated an administrative review of NSK's entries running from April 1, 1974 through July 31, 1985. In the course of requesting information between 1974 and 1987, Commerce utilized three different methodologies related to selecting the similar merchandise to be compared with a U.S. sale when there was no identical home market model sold.

Commerce subsequently limited its investigation to the period from April 1, 1974 through July 31, 1980. *Final Results,* 55 Fed.Reg. at 22,369. On March 29, 1989, Commerce published section 751(a) preliminary results on NSK's entries covering the period from April 1, 1974 through July 31, 1980, which stated that based on best information available, the weighted average dumping margins for NSK ranged from 7.77% to 19.28%. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From*

*Japan, Preliminary Results of Anti-dumping Duty; Administrative Review.* 54 Fed.Reg. 12,938 (1989). On June 1, 1990, Commerce issued the final results for Koyo and NSK TRBs, finding that the dumping margins for NSK ranged between 4.99% to 23.43%. *Final Results,* 55 Fed. Reg. at 22,382.

NSK seeks judgment on the agency record claiming that Commerce's review of NSK's 1974–1980 sales was not in accordance with law, that Commerce treated NSK differently than other similarly situated companies, that Commerce's failure to use master lists was not in accordance with law, and that Commerce's use of best information available was not reasonable and not in accordance with law.

## DISCUSSION

■ Pursuant to the Tariff Act of 1930, in reviewing a final determination of Commerce, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). It is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *The Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. Use of Master Lists

■ In this action, plaintiffs request this Court to order the liquidation of all entries entered between May 1, 1974 through March 31, 1978 in accordance with existing master lists. Commerce, however, claims that a section 751(a) review was in

order. A section 751(a) review, however, "does not apply to entries which were on master lists issued before the effective date of the Act." *The Timken Co. v. Regan,* 4 CIT 174, 178, 552 F.Supp. 47, 51 (1982); *Koyo Seiko,* 16 CIT at ——, 796 F.Supp. at 521–22.

In the case at bar, master lists existed for entries entered between May 1, 1974 and March 31, 1978. Therefore, all entries subject to master lists existing prior to the date of transfer of jurisdiction must be liquidated accordingly.

### 2. Entries Not Covered by Master Lists

Several entries, specifically those entered between April 1 to April 30, 1974 and April 1, 1978 to July 31, 1980, were not covered by master lists. Thus, in accordance with the transitional rules shifting jurisdiction from Treasury to Commerce, a section 751 review was in order for these entries. *See* Trade Agreements Act of 1979, 19 U.S.C. § 1516a note (1980) (Effective Date; Transitional Rules).

NSK, however, claims that in conducting their review of NSK TRBs, Commerce treated NSK differently than other similarly situated companies. Indeed, on September 1, 1981, Commerce published preliminary results for forty known firms covered by the 1976 dumping finding. TRBs From Japan I, 46 Fed.Reg. at 43,864.

NSK also claims that Commerce reviewed NSK's 1974–80 sales pursuant to a review initiated in 1980 but never published the results, and the subsequent review of the same sales, which was begun in 1986, was not in accordance with the law.

■ It is well established that Commerce is granted tremendous deference in conducting an administrative review. *Consumer Prod. Div., SCM Corp. v. Silver Reed America, Inc.,* 753 F.2d 1033, 1039 (Fed.Cir.1985). In this case, regarding the entries not covered by master lists, Commerce did not abuse their discretion in commencing a new review in 1986 because Koyo and NSK had been permitted to select what they considered to be similar home model TRBs and a foreign firm may

not determine "similar" products for comparison of value. *See generally, The Timken Co. v. United States*, 10 CIT 86, 630 F.Supp. 1327 (1986).

■ Commerce's subsequent change in methodologies, however, from three factors to five factors was not reasonable and was merely another delay in the investigation. *See Koyo Seiko*, 16 CIT at ——, 796 F.Supp. at 523. Congress has encouraged Commerce to complete administrative reviews within twelve months. *See* 19 U.S.C. § 1675(a)(1) (1988). It has been determined, however, that this timetable is directory and not mandatory. *Nakajima All Co. v. United States*, 12 CIT 585, 691 F.Supp. 358 (1988). Nevertheless, "while the statutory framework does not provide a restraint on Commerce for failing to complete an administrative review within a reasonable time, equity dictates that the issuance of a final determination [ten] years after the last entry in question is an abuse of Commerce's discretion...." *Koyo Seiko*, 16 CIT at ——, 796 F.Supp. at 523. In light of the circumstances in this case, Commerce's second change in methodology, from three factors to five factors was simply another delay in the investigation and was thereby unreasonable and not supported by substantial evidence. *See Id.* at ——, 796 F.Supp. at 523–24. Therefore, this case is remanded and all entries not subject to master lists are to be recalculated in accordance with the three factor model-match methodology.

**3. Best Information Available**

■ Finally, NSK claims that Commerce erred in its selection of best information available on several occasions. Commerce is granted broad discretion in determining what constitutes best information available. *See Chemical Prods. Corp. v. United States*, 10 CIT 626, 632–34, 645 F.Supp. 289, 294–96, *remand order vacated*, 10 CIT 819, 651 F.Supp. 1449 (1986). Commerce may resort to best information available when a party will not or cannot produce information. *Daewoo Elecs. Co. v. United States*, 13 CIT 253, 265, 712 F.Supp. 931, 944 (1989). NSK claims that

it was unable to provide ten years of cost of manufacture data in 1986 because the company discards cost records after five to six years. *Plaintiff's Brief in Support of Motion For Judgment Upon the Administrative Record* at 31. Thus, in this case, Commerce was faced with no alternative but to exercise the best information available rule.

**A. *Constructed Value***

Specifically, NSK claims that Commerce acted unreasonably by using cost data from 1980–1985 as best information available for the period 1974–1980. *Id.* at 30. Commerce, however, used this information selectively. It used the cost data from 1974–1980 to the extent it was available, and when it was not available, Commerce justifiably used data from 1980–1985.

**B. *Sales Data for 1974 to 1976***

NSK was likewise unable to provide a new home market sales listing for the period April 1, 1974 to June 30, 1976 because its sales record had been discarded. NSK claims that they were unable to supply the data because of Commerce's changes in methodology and inordinate delay. Nevertheless, the fact remains that NSK did not produce the data, thus leaving Commerce with no alternative but to invoke the best information available rule.

**C. *U.S. Inland Freight and Warehousing Expenses***

■ NSK also contests Commerce's selection of the highest rate available for U.S. inland freight and warehousing expenses. Commerce had the figures for each year during 1974–1980, yet selected the highest rate available. Commerce claims that to do otherwise "would require numerous and substantial recalculations." *Final Results*, 55 Fed.Reg. at 22,374 (Comment 27). The Court of Appeals has stated that the best information available rule may be viewed as "a club over the [ITA's] head, which Congress has brandished to force that agency to arrive at *some* determination within the time allotted." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d

1556, 1560 (Fed.Cir.1984) (emphasis in original). Thus, in light of the unreasonable time delay in this case, Commerce was justified in avoiding further delay by selecting the rates that it did.

### D. *Ocean Freight, Export Charges, Insurance and Export Packing*

Finally, NSK contests Commerce's selection of best information available for ocean freight, export charges, insurance and export packing. NSK claims that Commerce should have used the data submitted by NSK. In its final results, however, Commerce stated that:

> At verification the Department determined that NSK submitted information for ocean freight and export charges based on a sampling of expenses for each period and not on actual costs. Such a self-selected sampling of expenses is neither accurate nor a credible substitute for actual expense information. Furthermore, we were unable to verify even the sample because there were no backup data available for the 1976 to 1980 period. NSK was able to recalculate its figures to reflect actual costs for the August 1981 to July 1985 period at verification. We used as best information otherwise available, the recalculated rate for the 1984–1985 period, which was the highest rate from the 1981–1985 period.

*Final Results*, 55 Fed.Reg. at 22,374.

Thus, Commerce was justified in its selection of best information available in all respects.

### CONCLUSION

In accordance with the foregoing opinion, this case is remanded with instructions that all entries entered between May 1, 1974 through March 31, 1978, shall be liquidated pursuant to existing master lists, and dumping margins on all entries not covered by master lists shall be recalculated pursuant to the three criteria methodology for determining "such or similar" merchandise. Furthermore, Commerce's use of "best information available" was reasonable in all respects. Commerce shall report the results of the remand determination to this Court within ninety (90) days of the date this opinion is entered.

### PARTIAL JUDGMENT

This case having been duly submitted for decision following plaintiffs' motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein; now therefore, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiffs' motion is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), and all entries entered between the period May 1, 1974 and March 31, 1978 shall be liquidated in accordance with existing master lists; and it is further

ORDERED that plaintiffs' motion is denied in part and this case is remanded to Commerce and all entries not subject to master lists, entered between April 1 to April 30, 1974 and April 1, 1978 to July 31, 1980, shall be recalculated pursuant to the three criteria methodology for determining "such or similar" merchandise; and it is further

ORDERED that Commerce's use of "best information available," in all respects was supported by substantial evidence and otherwise in accordance with law; and it is further

ORDERED that Commerce shall report the results of the remand to this Court within ninety (90) days of the date this judgment is entered.