KOYO SEIKO CO., LTD. and Koyo
Corporation of U.S.A.,
Plaintiffs,

v.

UNITED STATES, Defendant,

The Timken Company, Defendant–
Intervenor.

NSK LTD. and NSK Corporation,
Plaintiffs,

v.

UNITED STATES, Defendant,

The Timken Company, Defendant–
Intervenor.

Slip Op. 95–111.
Court Nos. 90–06–00300, 90–06–00309.

United States Court of
International Trade.

June 15, 1995.

Powell, Goldstein, Frazer & Murphy, Washington, DC (Peter O. Suchman, Susan P. Strommer and Niall P. Meagher), for plaintiffs Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Donohue and Donohue, New York City (Joseph F. Donohue, Jr. and Kathleen C. Inguaggiato), for plaintiffs NSK Ltd. and NSK Corp.

Frank W. Hunger, Asst. Atty. Gen.; David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice (Velta A. Melnbrencis, Asst. Director); of counsel: Joan L. MacKenzie, Attorney–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, DC, for defendant.

Stewart and Stewart, Washington, DC (Terence P. Stewart, James R. Cannon, Jr. and John M. Breen), for defendant-intervenor The Timken Co.

*OPINION*

TSOUCALAS, Judge:

Plaintiffs Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A., Inc. and defendant-intervenor The Timken Company ("Timken") contest certain aspects of the Department of Commerce, International Trade Administration's ("Commerce"), redetermination on remand concerning *Tapered Roller Bearings Four Inches or Less in Outside Diameter From Japan; Final Results of Antidumping Duty Administrative Review* ("Final Results"), 55 Fed.Reg. 22,369 (1990). These Final Results cover the period from April 1, 1974 through July 31, 1980.

On May 10, 1994, the Court remanded, in part, the Final Results on tapered roller bearings ("TRBs") made in Japan by Koyo Seiko Co., Ltd. and distributed by its subsidiary, Koyo Corporation of U.S.A., Inc. (collectively "Koyo"), and by NSK Ltd., and distributed by its subsidiary, NSK Corporation (collectively "NSK"). *See Koyo Seiko Co. v. United States and NSK Ltd. v. United States*, 18 CIT ——, Slip Op. 94–75, 1994 WL 194124 (May 10, 1994) ("*Koyo/NSK*"). In *Koyo/NSK*, the Court ordered Commerce to redetermine the final dumping margins for entries made by Koyo between 1974–1977 and by NSK between 1974–1978, based on the complete record of Commerce's administrative review and on the Court's prior rulings in Court Nos. 90–0600300 and 90–06–00309 and in the related case, *Timken Co. v. United States*, 16 CIT 429, 795 F.Supp. 438 (1992) ("*Timken*"). The Court's order was issued pursuant to a mandate, dated April 18, 1994, from the United States Court of Appeals for the Federal Circuit (CAFC).

*BACKGROUND*

Prior to the CAFC's order, there had been four Court remands concerning these Final Results. In *Koyo Seiko Co. v. United States* ("*Koyo I*"), 16 CIT 366, 796 F.Supp. 517 (1992), *aff'd in part and rev'd in part*, 20 F.3d 1160 (Fed.Cir.1994), and *NSK Ltd. v. United States* ("*NSK*"), 16 CIT 401, 794 F.Supp. 1156 (1992), *rev'd in part*, 20 F.3d 1160 (Fed.Cir.1994), the Court instructed Commerce to (1) liquidate entries made by Koyo between April 1, 1974 and September 30, 1977, and entries made by NSK between May 1, 1974 and March 31, 1978, according to master lists which had been issued prior to the date that jurisdiction over these proceedings was transferred from the Department of the Treasury ("Treasury") to Commerce; (2) recalculate margins for entries not covered by master lists which were entered between October 1, 1977 and March 31, 1979 for Koyo, and between April 1 to April 30, 1974 and April 1, 1978 to July 31, 1980 for NSK according to the three-criteria methodology for determining "such or similar" merchandise; (3) recalculate dumping duties for entries made by Koyo between April 1, 1978 through March 31, 1979, without reference to the investigation of sales at prices below the cost of production ("COP"); (4) apply the twenty percent cost cap at the end rather than at the beginning of the model match selection process; (5) include Koyo's data for net weights of certain TRBs in the calculation of U.S. Customs duties; and (6) add only 30 days to Koyo's shipping time when calculating an adjustment for U.S. inventory expenses. The CAFC reversed the Court on the master list issue and affirmed the Court regarding incorporation of Commerce's COP investigation findings with respect to Koyo's 1978–1979 TRB entries. *See Koyo Seiko Co. v. United States*, 20 F.3d at 1160.

In determining the remanded results pursuant to *NSK*, 16 CIT at 401, 794 F.Supp. at 1156, Commerce discovered and corrected a clerical computer programming error that prevented sales of NSK's U.S. cups and cones from being compared with sales of home market split sets. NSK contested this correction; however, the Court found that Commerce had acted properly and affirmed Commerce's redetermination pursuant to remand. *See Koyo Seiko Co. v. United States*, 17 CIT 131, 819 F.Supp. 1093 (1993), *aff'd in part and rev'd in part on other grounds*, 20 F.3d at 1160.

In *Timken*, 16 CIT at 429, 795 F.Supp. at 438, the Court again remanded the Final Results to Commerce to (1) use Koyo's verified per-unit export department expenses as best information available ("BIA") when calculating the exporter's sales price ("ESP")

adjustment for export selling expenses; (2) apply the twenty percent cap on cost differences in accordance with *Koyo,* 16 CIT at 366, 796 F.Supp. at 517; and (3) eliminate application of the provisional assessment cap contained in 19 U.S.C. § 1673f(a) (1988), with respect to entries made by Koyo between June 5, 1974 to January 29, 1975 which were secured by bonds rather than by cash deposits.

In *Koyo I,* 16 CIT at 366, 796 F.Supp. at 527–31, the Court modified its judgment to allow Timken to supplement its allegation regarding below COP sales and to allow Commerce to consider this supplemental information in determining whether the dumping margins for the April 1, 1978 to March 31, 1979 period should be recalculated with reference to the investigation of below-cost-of-production sales. Subsequently, Commerce found sales below the cost of production and calculated new margins for Koyo.

Commerce submitted its remand results for NSK pursuant to *NSK* and *Timken* in August 1992, and for Koyo pursuant to *Koyo, Timken* and *Koyo I* in October 1992. The Court affirmed these results in their entirety. *See Koyo Seiko Co.,* 17 CIT at ——, 819 F.Supp. at 1093. Timken appealed. The CAFC affirmed the Court's decision in part and reversed in part. *See Koyo Seiko Co.,* 20 F.3d at 1160. Specifically, the CAFC (1) upheld the Court's affirmance of Commerce's incorporation of its COP investigation into the final results for Koyo's 1978–1979 TRB entries; (2) reversed the Court's decision to allow liquidation of Koyo's 1974–1977 and NSK's 1974–1978 TRB entries according to pre-existing Treasury master lists; and (3) remanded the Koyo/NSK cases for a redetermination of the final dumping margins for Koyo's 1974–1977 and NSK's 1974–1978 TRB entries. *Koyo Seiko Co.,* 20 F.3d at 1164–68.

### *Redeterminations*

On July 18, 1994, Commerce filed with this Court its Final Results of Redetermination Pursuant to Court Remand, *Koyo/NSK,* 18 CIT at ——, Slip Op. 94–75 (*"Redetermination on Remand"*). In redetermining margins for Koyo and NSK, Commerce employed the methodology used in the adminis-

trative review with the modifications previously ordered by the Court, to wit:

### A. Recalculation of Antidumping Duties Using the Three–Criteria Methodology

In *Koyo* and *NSK,* the Court had ordered Commerce to conduct model-match analyses for entries made by Koyo between October 1, 1977 through March 31, 1979, and by NSK between April 1, 1978 and July 31, 1979— using the three-criteria methodology in effect before 1987. These three criteria are: (1) outer diameter, (2) inner diameter, and (3) basic load rating. In the review, Commerce had used five criteria for the model match analysis. These criteria were comprised of the above-enumerated criteria plus "width" and "Y2" factor. For these remand results, Commerce recalculated the antidumping duty margins by comparing the sum of the values of the above-enumerated three physical criteria of commercially similar U.S. and home market models for Koyo's entries made between April 1, 1974 and September 30, 1977, and for NSK's entries made between June 6, 1974 and March 31, 1978, the entries which were covered by Treasury master lists. *Redetermination on Remand* at 6.

### B. Recalculation of Antidumping Duties by Applying the Twenty–Percent Cost "Cap" Before the Three–Criteria Model Selection Process

As noted, Commerce, in the original review, had employed a five-criteria analysis to select the ten most similar home market models. Commerce had then compared the difference-in-merchandise costs, when available, of the U.S. model with the home market models to determine whether the home market models were of approximately equal commercial value to the U.S. model. If the differences in costs between the U.S. and the home market models exceeded 20%, Commerce determined that the home market model was not equal to the U.S. model in commercial value. Commerce then used constructed value as the basis of foreign market value ("FMV"), rather than comparing the U.S. model to the next most similar home market model based on the above noted criteria. *Id.* at 6–7.

Commerce had requested a remand to conduct the 20% difference-in-merchandise test prior to selecting similar home market models based on the three criteria enumerated above. The Court remanded the issue in *Koyo* and *NSK*. Consistent with its remand results in *Koyo* and *NSK*, in these remand results, Commerce first applied the 20% difference-in-merchandise cost test to determine if U.S. and home market models were of approximately equal commercial value. Commerce selected the ten most physically similar home market models by applying the three-criteria model match methodology to these models of approximately equal commercial value. *Id.* at 7.

C. Recalculation of Dumping Duties for Koyo's 1978–1979 Entries Without Regard to the Investigation of Sales at Prices Below the Cost of Production

Although *Koyo I* allowed an examination of sales made below the cost of production by Koyo, that case concerned only the 1978–1979 period. Therefore, for these remand results, Commerce did not conduct a below-cost investigation for the 1974–1977 period. *Id.* at 8.

D. Use of Information Koyo Submitted for TRB Weights for Calculation of U.S. Customs Duties

In *Koyo*, the Court instructed Commerce to use information submitted by Koyo concerning unit weights in calculating U.S. Customs duties for the period October 1, 1977 through March 31, 1979. Consistent with its results in *Koyo*, for these remand results covering April 1974 through September 1977, Commerce used Koyo's unit weight data submitted prior to the preliminary results and multiplied it by the U.S. Customs duty rate to determine the exporter's sales price ("ESP") adjustment for Customs duties for Koyo's entries made between April 1, 1974 and September 30, 1977. *Id.*

E. Use of Verified Information for Calculation of Adjustment for U.S. Inventory Expenses

In *Koyo*, the Court ordered Commerce to add 30 days, the verified time of shipment from Japan, to the number of days in inventory, rather than adding the 45 days which Koyo had reported. Consistent with the remand results in *Koyo*, for these remand results, Commerce used the verified 30–days shipping period to determine time and expenses associated with maintaining the TRBs in inventory. *Id.* at 8–9.

F. Export Department Expenses Adjustment to Exporter's Sales Price

In *Timken*, the Court ordered Commerce to use the verified per-unit export department expenses as BIA when calculating the ESP adjustment for Koyo's export selling expenses. The verified expense figure was a ratio of the percent of the cost, insurance and freight ("CIF") value of all exported goods. In the Final Results, Commerce had used a ratio which was based on a comparison of the export department's expenses attributable to U.S. exports with the CIF value of all U.S. exports. Consistent with its remand results in *Timken*, for these remand results, Commerce used the verified ratio. *Id.* at 9.

G. Antidumping Duty Assessment Cap

In *Timken*, Commerce agreed with Timken that the provisional assessment cap did not apply to certain entries subject to bonds during the period of review. In accordance with the Court's orders in *Timken*, it is Commerce's intention to instruct the United States Customs Service ("Customs") to liquidate bond-secured entries made between June 6, 1974 (the date that Treasury published an affirmative determination of sales at less than fair value ("LTFV")) and January 29, 1975 (the date of the International Trade Commission (the "ITC") published its final affirmative material injury determination), and to collect final assessments of antidumping duties without regard to the provisional duty assessment cap contained in section 737 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673f(a). *Redetermination on Remand* at 9–10.

As in the administrative review, in these redetermined results, Commerce used the rate calculated for NSK for 1976–1977 as the BIA rate for the 1974–1976 period. Com-

merce determined the following antidumping margins for Koyo and NSK:[1]

Koyo: 04–01–1974 to 07–31–1976 11.89%
08–01–1976 to 09–30–1977 4.78%
NSK: 06–06–1974 to 06–30–1976 17.42%
07–01–1976 to 07–31–1977 17.42%
08–01–1977 to 03–31–1978 18.63%

*Id.* at 10.

Commerce informs the Court that if its redetermination results are approved, it will instruct Customs to assess antidumping duties on entries made from April 1, 1974 through September 30, 1977 for Koyo and on entries made from June 6, 1974 through March 31, 1978 for NSK. Commerce will also issue assessment instructions for entries, unchallenged in these actions, which were affirmed by the Court for Koyo regarding entries made from October 1, 1977 through March 31, 1979, and for NSK regarding entries made from April 1, 1978 through July 31, 1980. Commerce will issue appraisement instructions directly to Customs. *Id.* at 11.

### Discussion

Commerce's final results filed pursuant to a remand will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

### 1. Antidumping duty Assessment Cap

Koyo protests Commerce's intention to disregard the duty assessment cap requirement of 19 U.S.C. § 1673f(a)[2] when instructing Customs to liquidate entries made by Koyo between June 6, 1974 and January 29, 1975. *Comments of Plaintiffs Koyo Seiko Co. Ltd. and Koyo Corporation of U.S.A. on Results of Redetermination Pursuant to Court Remand ("Koyo's Brief")* at 2. Koyo notes that in *Timken Co.,* 16 CIT at 438–40, 795 F.Supp. at 446–47,[3] the Court held that the provisional assessment cap is inapplicable where bonds instead of cash deposits are posted as security for estimated duties. Koyo argues, however, that *Timken* is no longer controlling and urges the Court to follow the decision of the CAFC in *Daewoo Elecs. Co. v. United States,* 6 F.3d 1511, 1523 (Fed.Cir.1993), which held that § 1673f(a) applies equally to entries secured by cash deposits and bonds. *Koyo's Brief* at 2. In addition, it is Koyo's position that the Court has found that its 1974–1975 entries are sub-

(1) disregarded, to the extent the cash deposit collected is lower than the duty under the order, or
(2) refunded, to the extent the cash deposit is higher than the duty under the order. 19 U.S.C. § 1673b(d)(2) (1988) provides in pertinent part:
**(d) Effect of determination by the administering authority**
If the preliminary determination of the administering authority under subsection (b) of this section is affirmative, the administering authority—

. . . . .

(2) shall order the posting of a cash deposit, bond, or other security, as it deems appropriate, for each entry of the merchandise concerned equal to the estimated average amount by which the foreign market value exceeds the United States price.

---

**1.** NSK poses no objections to Commerce's July 18, 1994 Results of Redetermination. *Comments of NSK Ltd. and NSK Corporation to the Results of Redetermination.*

**2.** 19 U.S.C. § 1673f(a) provides:

**§ 1673f. Treatment of difference between deposit of estimated antidumping duty and final assessed duty under antidumping duty order**
**(a) Deposit of estimated antidumping duty under section 1673b(d)(2) of this title**
If the amount of a cash deposit collected as security for an estimated antidumping duty under section 1673b(d)(2) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be—

**3.** In *Timken Co.,* 16 CIT at 438–40, 795 F.Supp. at 446–47, the Court followed *Zenith Elecs. Corp. v. United States,* 15 CIT 394, 397–400, 770 F.Supp. 648, 652–54 (1991).

ject to a bond rate of zero percent to cover estimated dumping duties. *Id.* at 3–5 (citing *Koyo,* 16 CIT at 366, 796 F.Supp. at 521). Koyo requests that the Court order these entries liquidated at their "as entered" zero percent assessment rate. *Id.* at 3–5, 9.

Commerce argues that Koyo fully and actively participated in *Timken* and did not appeal the Court's adverse ruling that bonds of the type posed by Koyo in the underlying proceeding did not cap its antidumping duty liability. Commerce contends, therefore, that the Court's judgment in *Timken* has become final and conclusive as to Koyo. *Defendant's Response to the Comments Filed by Plaintiffs and the Intervenor with Respect to the Redetermination Pursuant to Court Order ("Commerce's Brief")* at 6–7. Commerce further contends that the entries at issue are governed by the Antidumping Act of 1921 (the "1921 Act") and under that applicable law, Koyo was not required to, and did not, deposit any estimated duties or post any bonds in lieu of cash as security for estimated antidumping duties pursuant to any affirmative preliminary determination. *Commerce's Brief* at 10. Commerce points out that § 1673f(a), the provisional assessment cap, and § 1673b(d)(2), which provides for the posting of cash deposits, bonds, or other security, are intended to operate together and both provisions post-date Koyo's entries. *Id.* at 7–10. Commerce asserts that the Court has agreed with its statutory interpretation that the substantive provisions of the 1921 Act apply to pre–1980 entries. *Id.* at 10–11. Alternatively, Commerce contends that Customs requested Koyo to post bonds to cover a weighted-average margin of seventeen percent during the investigation. *Id.* at 11.

Timken contends that the doctrine of *res judicata* bars Koyo from re-arguing the assessment cap issue post-*Timken. Rebuttal of the Timken Company to Koyo Comments Regarding Remand Determination* at 4. In rebuttal, Koyo asserts that *Timken* is part of the law of this case and, in light of the CAFC's contrary finding on this issue in *Daewoo,* the Court may reconsider its *Timken* decision under the "law of the case" doctrine. *Reply Comments of Plaintiffs Koyo*

*Seiko Co., Ltd. and Koyo Corporation of U.S.A. on Results of Redetermination Pursuant to Court Remand ("Koyo's Reply")* at 3–8.

■ In remanding this case to Commerce in *Koyo/NSK,* 18 CIT at ——, Slip Op. 94–75, the Court specifically instructed Commerce to redetermine the final dumping margins of Koyo's 1974–1977 TRB entries based on the complete record of the administrative review conducted and on the Court's prior rulings in this case and in the related *Timken* case, 16 CIT at 429, 795 F.Supp. at 438. The phrase "law of the case" expresses the practice of courts generally to "refuse to reopen what has been decided." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). Under this doctrine, a court will generally not reopen an issue already decided unless (1) the evidence in a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of law applicable to such issues, or (3) the decision was clearly erroneous and would work a substantial injustice. *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.,* 761 F.2d 649, 657 (Fed.Cir.) (citation omitted), *cert. denied,* 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985). Because of the manner in which the Court has handled these related cases and in order to clarify the Court's position on the assessment cap issue, the Court will consider the merits of Koyo's argument under the second exception of the law of the case doctrine.

■ In *Timken,* the Court held that the assessment cap contained in 19 U.S.C. § 1678f(a) does not apply in the absence of cash deposits of estimated duties. *Timken,* 16 CIT at 429, 795 F.Supp. at 447. *Timken* concerned Koyo's entries made between June 5, 1974 (the date that Treasury published its affirmative determination of sales at LTFV and withholding of appraisement notice) to January 29, 1975 (the date that the International Trade Commission published its affirmative injury determination). *Id.* at 429, 795 F.Supp. at 447 (citing *Tapered Roller Bearings From Japan. Antidumping; Withholding of Appraisement Notice,* 39 Fed.Reg. 19,969 (1974); *Tapered Roller Bearings and*

*Certain Components Thereof From Japan. Determination of Likelihood of Injury,* 40 Fed.Reg. 4,366 (1975)). In *Timken,* the Court observed that the applicable law at the time of Koyo's entries was the Antidumping Act of 1921 [4] which did not provide for the calculation of estimated dumping duties or for the application of a provisional assessment cap and, consequently, Koyo had not had to deposit cash to cover estimated duties. *Id.* at 439, 795 F.Supp. at 447.

Subsequent to the Court's *Timken* decision, the CAFC rendered its finding that a cap applies to antidumping duties irrespective of whether a bond or cash deposit was posted as security. *Daewoo Elecs. Co.,* 6 F.3d at 1523. However, *Daewoo* can be distinguished on the facts from this case. Therefore, the *Daewoo* decision does not change the Court's ultimate decision in this case concerning the specific entries at issue. *Daewoo* concerned entries made between October 19, 1983 and April 30, 1984. *Id.* at 1512. The applicable law at the time those entries were made was the Trade Agreements Act of 1979 ("the 1979 amendments"). The 1979 amendments came into effect on January 1, 1980 and instituted, for the first time, an assessment cap. *See* 19 U.S.C. § 1673f(a). The *Daewoo* entries were also subject to the bonding requirement of 19 U.S.C. § 1673b(d)(2). Therefore, *Daewoo* addressed post–1980 entries in relation to the current antidumping duty law.

In contrast, the entries in the case at bar were made between June 5, 1974 and January 29, 1975. The applicable law during that time period was the 1921 Act. The 1921 Act made no provision for the calculation of estimated antidumping duties and did not require the posting of cash deposits or bonds as security for estimated duties. As Koyo's entries predated the effective date of the assessment cap provision, they are governed by the 1921 Act.

Further, Commerce has frequently announced that the 1921 Act applies to unliquidated pre–1980 entries. *See, e.g., Tapered Roller Bearings and Certain Components Thereof From Japan; Preliminary Results of Antidumping Finding, Tentative Determination to Revoke in Part, and Intent to Revoke in Part,* 49 Fed.Reg. 20,354, 20,355 (1984); *Tapered Roller Bearings and Certain Components Thereof From Japan; Final Results of Administrative Review of Antidumping Finding,* 49 Fed.Reg. 8,976 (1984); *Calcium Pantothenate From Japan; Preliminary Results of Administrative Review of Antidumping Finding,* 47 Fed.Reg. 7,476–77 (1982); and *Tapered Roller Bearings and Certain Components Thereof From Japan; Preliminary Results of Administrative Review of Antidumping Finding; NTN Toyo Bearing Co., Ltd. and NTN Bearing Corporation of America; and Tentative Determination to Revoke in Part,* 46 Fed.Reg. 14,371 (1981) (stating that the substantive provisions of the 1921 Act apply to all unliquidated entries made prior to 1980). The Court has previously recognized that the substantive provisions of the 1921 Act apply to unliquidated entries made prior to 1980. *See Timken Co. v. United States,* 10 CIT 86, 96 n. 5, 110, 630 F.Supp. 1327, 1336 n. 5, 1347 (1986).

Moreover, Koyo does not point to any support in the statute or its legislative history that would support its position that the assessment cap applies to pre–1980 entries.

In addition, while the Court makes reference to a "zero assessment rate" for Koyo in *Koyo I,* 16 CIT at 370, 796 F.Supp. at 521, it made no finding with respect to the applicable bond rate to cover estimated duties on the subject entries. Moreover, Koyo has not established that the entries at issue should be liquidated at zero antidumping duties. The record shows that on September 14, 1977, Treasury issued CIE No. 526/73, Supplement No. 6, which referred to a prior CIE dated June 18, 1974. P.R. Document No. 37. The referenced CIE notes that Supplement No. 1 "caused appraisement to be withheld on the subject merchandise and informed Customs import specialists of a weighted-average margin of seventeen percent that the investigation had uncovered on imports of

---

4. Antidumping Act of 1921, 42 Stat. 11, *repealed by* Trade Agreements Act of 1979, Pub.L. No. 96– 39, 93 Stat. 144 (codified as amended in scattered sections of 19 U.S.C.).

the subject merchandise." [5] *Id.* Moreover, correspondence by Koyo's own counsel to Customs, dated January 31, 1978, makes reference to this seventeen percent bond rate. P.R. Document No. 48. These documents refute Koyo's contention that its bonding rate was zero.

Accordingly, the Court affirms Commerce's Redetermination on Remand on this issue as supported by substantial evidence and in accordance with law.

### 2. *Computer Programming Errors*

 Timken contends, and Commerce agrees, that in modifying the original computer program to recalculate margins, two clerical or methodological errors resulted which must be corrected in order to derive accurate dumping margins for Koyo's entries made during the period April 1, 1974 to September 30, 1977. *Comments of The Timken Company Regarding Final Remand Redetermination* at 1–3. In rebuttal, Koyo contends that Timken's claim of clerical errors should be dismissed as untimely because Timken failed to bring the alleged errors to Commerce's attention within the requisite five business days of disclosure of the remand calculations as required by 19 C.F.R. § 353.28(b) (1994). *Koyo's Brief* at 9–11.

A review of the facts dispels Koyo's claim of untimeliness with respect to the two clerical or methodological errors identified by Timken. One of these errors concerns the failure to make price comparisons based upon identical merchandise, the other pertains to the failure to take into account certain transactions because an exchange rate was not available. The importance of correcting these two errors is confirmed by the record.

Therefore, the Court instructs Commerce to correct the two errors identified by Timken in order to derive accurate dumping margins for Koyo's entries made during the period April 1, 1974 to September 30, 1977.

### Conclusion

In accordance with the foregoing opinion, this case is remanded to Commerce to correct the two computer programming errors identified by Timken. Upon correction of these two errors, Commerce's Redetermination on Remand is affirmed in all respects.

### JUDGMENT

The Department of Commerce, International Trade Administration ("Commerce"), having submitted its *Results of Redetermination Pursuant to Court Remand, Koyo Seiko Co. v. United States and NSK Ltd. v. United States*, 18 CIT ——, Slip Op. 94–75, 1994 WL 194124 (May 10, 1994) (*"Redetermination on Remand"*), and the Court having examined all comments filed in regard to said Redetermination on Remand, it is hereby

**ORDERED** that this case is remanded to Commerce to correct the two computer programming errors identified by The Timken Company; and it is further

**ORDERED** that upon correction of the two programming errors, Commerce's Redetermination on Remand is affirmed in all respects; and it is further

**ORDERED** that this case is dismissed.

---

5. The margin established for Koyo's entries on remand was 11.89% for the period April 1974 to July 1976. *Redetermination on Remand* at 10.