The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation, Defendants–Intervenors.

Court No. 90–06–00313.

United States Court of International Trade.

May 22, 1992.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen, Vincent J.Branson, Patrick J. McDonough and Amy S. Dwyer, Washington, D.C. (Scott A. Scherff, Managing Atty., The Timken Co., Canton, Ohio, of counsel), for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Washington, D.C. (Joan L. MacKenzie, Atty. Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel), for defendant.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Richard Belanger, Susan P. Strommer, Neil R. Ellis, T. George Davis, Susan E. Silver, Eric G. Stockel, Robert Torresen, Jr., Niall P. Meagher, Jonathan A. Knee, Washington, D.C., and Barbara D.A. Eyman, Boston, Mass., for defendants-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Donohue and Donohue, Joseph F. Donohue, Jr., James A. Geraghty, Kathleen C. Inguaggiato and Daniel W. Dowe, Washington, D.C., for defendants-intervenors NSK Ltd. and NSK Corp.

## OPINION

TSOUCALAS, Judge:

This Court is called upon to examine the conclusions of the Commerce Department, International Trade Administration ("ITA"), in its first administrative review of tapered roller bearings ("TRBs") from Japan produced by Koyo Seiko Co., Ltd., Koyo Corporation of U.S.A. ("Koyo"), NSK Ltd. and NSK Corporation ("NSK"). *Tapered Roller Bearings Four Inches or Less in Outside Diameter From Japan; Final Results of Antidumping Duty Administrative Review*, 55 Fed.Reg. 22,369 (1990) ("Final Results"). These Final Results cover the period from April 1, 1974 through March 31, 1979 for Koyo and April 1, 1974 through July 31, 1980 for NSK. Plaintiff in this case, The Timken Company ("Timken"), moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record and remand to the ITA for recalculation of dumping margins.

### Background

This case comes before the Court for decision along with two related cases, all challenging the ITA's Final Results on various grounds. This decision is to be considered in conjunction with the Court's opinions in *Koyo Seiko Co. v. United States*, 16 CIT ——, 796 F.Supp. 517 (1992), and *NSK Ltd. v. United States*, 16 CIT ——, 794 F.Supp. 1156 (1992). This Court's opinions in these related cases directly impact on the outcome of this case.

Refer to this Court's opinions in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517, and *NSK Ltd.*, 16 CIT ——, 794 F.Supp. 1156, for a comprehensive history of the circumstances surrounding this action.

Plaintiff Timken's allegations in this action are as follows: (1) in calculating Koyo's export selling expenses, ITA erroneously relied on unverified data; (2) ITA erred in its selection of "best information otherwise available" to replace information not supplied by respondents; (3) ITA's adjustment of constructed value for "difference in circumstance of sale" was contrary

to law and unsupported by substantial evidence; (4) ITA's failure to deduct importer's profit from Exporters Sales Price ("ESP") was improper and contrary to law; (5) ITA's computer programming instructions failed to implement its stated methodology of matching sales of identical bearings in the home and U.S. markets for Koyo; (6) ITA incorrectly implemented the "twenty percent cap" on difference in merchandise cost; and (7) ITA failed to instruct the U.S. Customs Service to collect the full amount of antidumping duties payable on entries made between June 5, 1974 and January 29, 1975.

Defendant ITA agrees with Timken's contentions in regard to the collection of full antidumping duties on entries made between June 5, 1974 and January 29, 1975 and in regard to the implementation of the "twenty percent cap" on difference in merchandise cost. ITA requests the Court to remand this proceeding to them on these two issues and to sustain the ITA's actions in all other respects.

Defendant-intervenor Koyo supports remand of this action in regard to the alleged failure of the ITA's computer programming instructions to implement its stated methodology for matching sales of identical models in the home and U.S. markets for Koyo, and the ITA's incorrect implementation of the "twenty percent cap" on difference in merchandise cost. Koyo opposes Timken's motion for judgment on the agency record in regard to all other issues raised in this action.

Defendant-intervenor NSK opposes Timken's motion in regard to Timken's challenge of the ITA's choice of best information available where NSK did not provide requested information to the ITA, Timken's challenge of the ITA's adjustment to constructed value for differences in circumstances of sale and Timken's challenge of the ITA's failure to deduct importer's profits from ESP. NSK requests the Court to deny plaintiff's motion for judgment on the agency record and to dismiss this action.

For the reasons detailed below, the Court finds that the case must be remanded to the ITA to make corrections in its calculation of the dumping margins.

## Discussion

The Court's jurisdiction over this matter is derived from 28 U.S.C. § 1581(c) (1988).[1]

■■■ A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988). Under this standard, the ITA is granted considerable deference "in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law." *Chemical Prods. Corp. v. United States*, 10 CIT 626, 628, 645 F.Supp. 289, 291, *remand order vacated*, 10 CIT 819, 651 F.Supp. 1449 (1986) (citations omitted).

## I. Calculation of Koyo's Export Selling Expenses

■■ Plaintiff argues that the ITA used unsubstantiated and unverified information in calculating the deduction from ESP for export selling expenses by using Koyo's claimed allocation of its export department expenses to U.S. sales.[2] Timken claims that Koyo did not substantiate this claimed allocation, and that the ITA did not verify it. Moreover, Timken claims that this unsubstantiated and unverified allocation should not have been used in calculating the deduction of export selling expenses from ESP when verified per-unit export expenses were available.

ITA and Koyo argue that the ITA is not required to verify every piece of information submitted to it citing *Monsanto Co. v. United States*, 12 CIT 949, 951, 698 F.Supp. 285, 288 (1988). ITA points out that it did verify Koyo's export department's expenses but reasonably chose not to verify, but to accept, Koyo's proposed allocation of those expenses.

While it is true that the ITA is not required to verify every piece of information submitted to it, it would seem that the ITA did in fact attempt to verify Koyo's proposed allocation methodology and was unable to do so. The verification report for Koyo states:

> Koyo nevertheless allocated [    ] of total export expenses to U.S. exports. *This allocation was not substantiated.*

Administrative Record ("AR") (Pub.) Doc. 289 at 7 (emphasis added). ITA's preliminary analysis memorandum also states that Koyo's proposed allocation method was unsubstantiated. AR (Pub.) Doc. 387 at 16–17.

The preference for the use of verified information in the conduct of an administrative review, and for the use of best information available when verified information is unavailable, is clear from 19 U.S.C. § 1677e(b)(3) (1988).[3] There is also

---

**1.** 28 U.S.C. § 1581(c) provides in pertinent part:

The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

**2.** In calculating exporter's sales price, 19 U.S.C. § 1677a(e)(2) (1988) requires the deduction of all selling expenses incurred with respect to U.S. sales:

**(e) Additional adjustments to exporter's sales price**

For purposes of this section, the exporter's sales price shall also be adjusted by being reduced by the amount, if any, of—

. . . . .

(2) expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise,

. . . .

**3.** 19 U.S.C. § 1677e(b)(3) states in pertinent part:

**(b) Verification**

a preference for the use of verified data as best information available when the use of best information is necessary. This Court has supported this preference for the use of verified data as best information available. *See Smith Corona Corp. v. United States,* 15 CIT ——, ——, 771 F.Supp. 389, 399 (1991); *Hercules, Inc. v. United States,* 11 CIT 710, 754–55, 673 F.Supp. 454, 490 (1987).

In this administrative review the ITA also has shown a preference for using verified data instead of unverified data as best information available:

> As best information otherwise available, we used the information from the April 1978 to March 1979 period *because these data had been verified* in September 1979.

*Final Results,* 55 Fed.Reg. at 22,378 (Comment 42) (emphasis added);

> Koyo was unable to provide supporting documentation for data submitted prior to 1980 as confirmed at verification in December 1986. We used the 1978–1979 period data as best information otherwise available *because these data were verified.*

*Id.* at 22,379 (Comment 43) (emphasis added). *See also Porcelain-on-Steel Cooking Ware From Mexico; Final Results of Antidumping Duty Administrative Review,* 55 Fed.Reg. 21,061, 21,062 (1990) (Comment 8); *Television Receivers, Monochrome and Color, From Japan; Final Results of Antidumping Duty Administrative Review,* 53 Fed.Reg. 4050, 4052 (1988) (Comment 13).

ITA's use of unverified data for the allocation of Koyo's export department's expenses to U.S. sales as best information available, when verified per-unit export department expenses were available, was unsupported by substantial evidence on the record. This Court remands this proceeding to the ITA to use the verified per-unit export department expenses as best information available when calculating the adjustment to ESP for Koyo's export selling expenses.

## II. Best Information Available

█ Plaintiff challenges the ITA's choice of best information available for: (1) information not provided by Koyo necessary to split bearing components in order to compare similar merchandise; (2) information not provided by Koyo on variable costs of manufacture; and (3) for missing information on Koyo's aftermarket sales. Plaintiff also challenges the ITA's choice of best information available used when NSK failed to provide requested physical criteria data for certain U.S. sales.

ITA, Koyo and NSK argue that Timken failed to exhaust its administrative remedies in regard to these issues and so is barred from raising them here.

█ Exhaustion of administrative remedies is generally a prerequisite to challenging an administrative determination in this court. *See* 28 U.S.C. § 2637(d) (1988).[4] It is well established that "[a] reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *see also Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed.Cir.1990); *Koyo Seiko Co. v. United States,* 15 CIT ——, ——, 768 F.Supp. 832, 835 (1991); *Budd Co., Wheel & Brake Div. v. United States,* 15 CIT ——, ——, 773 F.Supp. 1549, 1554

---

> The administering authority shall verify all information relied upon in making—
>
> .    .    .    .    .
>
> (3) a review and determination under section 1675(a) of this title,
>
> . . . .
>
> If the administering authority is unable to verify the accuracy of the information submitted, it shall use the best information available to it as the basis for its action. . . .
> *See also* 19 C.F.R. § 353.37 (1990).

**4.** 28 U.S.C. § 2637(d) states:
> (d) In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

(1991); *Alhambra Foundry*, 12 CIT at 346–47, 685 F.Supp. at 1255–56.

In its prehearing brief during the course of the administrative review, Timken supported those instances where the ITA decided to use best information available in the preliminary results. AR (Pub.) Doc. 416 at 22–29. However, Timken never took issue with the ITA's specific choices of which data to use as best information available. Timken made general statements that any data used as best information by the ITA should be adverse. *Id.;* AR (Pub.) Doc 422 at 92–96. Since the ITA's choices of data used as best information available were disclosed in its preliminary determination, Timken was required to specifically contest at the administrative level those choices with which it did not agree. ITA was never made aware that Timken had problems with the ITA's choice of data used as best information available and had no opportunity to address Timken's concerns and possibly rectify them, or at least explain its choices in greater detail. *Rhone Poulenc*, 899 F.2d at 1191 (rejection of argument that raising general issue of choice of best information available also raises specific issue of need for adjustment of data chosen); *see also Koyo Seiko Co.*, 15 CIT at ——, 768 F.Supp. at 835; *Budd Co.*, 15 CIT at ——, 773 F.Supp. at 1554; *Alhambra Foundry*, 12 CIT at 346–47, 685 F.Supp. at 1255–56.

This Court finds that Timken's failure to raise its problems with the ITA's choices of best information available for information not provided by Koyo necessary to split

bearing components in order to compare similar merchandise, for information not provided by Koyo on variable costs of manufacture, for Koyo's missing aftermarket sales information, and for information which NSK failed to provide regarding requested physical criteria data for certain U.S. sales, bars Timken from raising those issues here. These specific choices of data used as best information available by the ITA are upheld to the extent that the use of best information available in these instances is still required during the recalculation of dumping margins required by this Court's decision in *Koyo Seiko Co. v. United States*, 16 CIT ——, 796 F.Supp. 517 (1992), and *NSK Ltd. v. United States*, 16 CIT ——, 794 F.Supp. 1156 (1992).

### III. Difference in Circumstance of Sale Adjustment

■ Plaintiff takes this opportunity to once again challenge the ITA's grant of a difference in circumstance of sale adjustment in the calculation of constructed value.[5] ITA, Koyo and NSK argue that Timken failed to exhaust its administrative remedies in regard to this issue. However, Timken did raise the issue of the grant of a difference in circumstance of sale adjustment to constructed value during the administrative proceeding. AR (Pub.) Doc. 416 at 34.

Plaintiff points out that this Court has upheld the ITA's authority to perform difference in circumstance of sale adjustments in calculating constructed value.

---

**5.** 19 U.S.C. § 1677b(e) (1988), which defines how to calculate constructed value, states in pertinent part:

**(e) Constructed Value**
 **(1) Determination**
 For purposes of this subtitle, the constructed value of imported merchandise shall be the sum of—
 (A) the cost of materials ... and of fabrication ...;
 (B) an amount for general expenses and profit ..., except that—
 (i) the amount for general expenses shall not be less than 10 percent of the cost as defined in subparagraph (A) ...
ITA has implemented this statutory provision at 19 C.F.R. § 353.50 (1990).

19 U.S.C. § 1677b(a)(4) (1988), which sets out adjustments to be made to foreign market value, states in pertinent part:
 **(4) Other adjustments**
 In determining Foreign market value, if it is established to the satisfaction of the administering authority that the amount of any difference between the United States price and the foreign market value ... is wholly or partly due to—

 .　.　.　.　.

 (B) other differences in circumstances of sale;

 .　.　.　.　.

 then due allowance shall be made therefore. ITA has implemented this statutory provision at 19 C.F.R. § 353.56 (1990).

*Memorandum in Support of Plaintiff's Second Motion for Judgment on the Agency Record* ("Plaintiff's Motion") at 53; *see The Timken Co. v. United States* ("Timken III"), 14 CIT ——, ——, Slip Op. 90–117 at 8–10, 1990 WL 180495 (Nov. 5, 1990). Plaintiff agrees that this Court has also held that reduction of general expenses below the statutory ten percent of the cost of manufacture in the calculation of constructed value through the use of a difference in circumstance of sale adjustment may be reasonable and in accordance with law. *Plaintiff's Motion* at 53–54; *see The Timken Co. v. United States* ("Timken II"), 11 CIT 786, 798 n. 21, 673 F.Supp. 495, 508 n. 21 (1987). However, Timken argues that *Timken II* is no longer controlling and that this Court should follow the decision in *Zenith Elecs. Corp. v. United States,* 15 CIT ——, 770 F.Supp. 648 (1991). Timken believes that the Court's decision in *Zenith* stands for the proposition that, in calculating constructed value, general expenses may not be reduced below the statutory ten percent by a difference in circumstance of sale adjustment.

In *Zenith,* the Court found that the number of home market sales under investigation were insufficient to allow the ITA to calculate foreign market value. In other words, the home market in *Zenith* was found to be not viable and the ITA used only constructed value to calculate foreign market value. Therefore, sales expenses from that home market could not be used to reduce the statutorily required ten percent figure for general expenses. *Id.* 15 CIT at ——, 770 F.Supp. at 656–57.

*Zenith* can clearly be distinguished on the facts from this case. Here there was clearly a viable home market and in many cases home market sales were used to calculate foreign market value. Only in situations where the ITA could not find home market sales of identical or similar bearings was constructed value used. Therefore, since the home market in this case was viable, the use of sales expenses from the home market for a difference in circumstance of sale adjustment which reduced general expenses below ten percent of the cost of manufacture was reasonable and in

accordance with law. *Timken II,* 11 CIT at 798 n. 21, 673 F.Supp. at 508 n. 21.

Timken also challenges the methodology used by the ITA to make this adjustment. Specifically, Timken alleges that the ITA's adjustment to constructed value for differences in circumstance of sale must be limited to indirect selling expenses. In this case, Timken alleges that the ITA's adjustment consisted of all general, administrative and selling expenses and not solely indirect selling expenses. ITA, Koyo and NSK argue that Timken failed to exhaust its administrative remedies by not raising this specific issue below.

As discussed above, exhaustion of administrative remedies is generally a prerequisite to challenging an administrative determination in this court. *See* 28 U.S.C. § 2637(d); *Koyo Seiko Co.,* 15 CIT at ——, 768 F.Supp. at 835; *Budd Co.,* 15 CIT at ——, 773 F.Supp. at 1554; *Alhambra Foundry,* 12 CIT at 346–47, 685 F.Supp. at 1255–56.

It is clear to this Court that this is precisely the type of issue which must be raised at the administrative level so it can be addressed by the ITA before it can be entertained here. Simply raising, at the administrative level, the broad issue of the correctness of the grant of a difference in circumstance of sale adjustment in calculating constructed value, as Timken did, and arguing that this implicitly raises specific issues as to how that adjustment is calculated is insufficient. *Cf. Rhone Poulenc,* 899 F.2d at 1191 (rejection of agreement that raising general issue of choice of best information available also raises specific issue of need for adjustment of data chosen).

Therefore, to the extent that an adjustment to constructed value for differences in circumstance of sale is necessary during the recalculation of the dumping margin required by this Court's opinion in *Koyo Seiko Co.,* 16 CIT ——, 796 F.Supp. 517, the ITA's grant of an adjustment and method used for calculating that adjustment are sustained.

## IV. Deduction of Importer's Profit from ESP

■ Plaintiff challenges the ITA's decision not to deduct the profits of an importer from ESP. Timken maintains that the ITA is required to deduct the profits of an importer from its calculation of ESP under 19 U.S.C. § 1677a(e)(1) (1988).[6] Here plaintiff asserts a claim previously rejected by this Court on more than one occasion. *See Timken III*, 14 CIT ——, ——, Slip Op. 90-117 at 11-12 (Nov. 5, 1990); *Timken II*, 11 CIT at 811-14, 673 F.Supp. at 518-21; *The Timken Co. v. United States* ("*Timken I*"), 10 CIT 86, 102-11, 630 F.Supp. 1327, 1341-48 (1986).

Timken contends that the meaning of "commissions" under 19 U.S.C. § 1677a(e)(1) should be interpreted to include both normal sales commissions and the profits of importers.

Plaintiff presents no new information here which would lead this Court to reconsider an issue which would seem to be well settled. This Court finds, as did the courts in *Timken I, Timken II* and *Timken III*, that the ITA's interpretation of "the word 'commissions' to mean only commissions, and not 'commissions and profits,' is reasonable" and also in accordance with law. 14 CIT at ——, Slip Op. 90-117 at 12; *see also* 11 CIT at 814, 673 F.Supp. at 520-21; 10 CIT at 111, 630 F.Supp. at 1348.

## V. Identification of Sales of Identical Bearings

■ Timken and Koyo argue that the ITA's computer program for identifying sales of identical bearings in the home and U.S. markets failed to identify any identical bearings as being sold in both markets. However, they state that sales of identical bearings in both markets did occur. They argue that the ITA's failure to correctly identify sales of identical bearings was contrary to the ITA's stated intention to first match sales of identical bearings sold in both markets, if no sales of identical bearings were found to use sales of similar bearings and if no sales of similar bearings were found to use constructed value. Both Timken and Koyo argue that the ITA's computer program failed to accomplish its task because matches of identical sales were made solely on the basis of nomenclature and not, alternatively, on the basis of the information on the five physical criteria provided by Koyo.

Resolution of this issue is directly impacted by this Court's opinion in *Koyo Seiko Co. v. United States*, 16 CIT ——, 796 F.Supp. 517 (1992). In *Koyo*, this Court directed the ITA to recalculate Koyo's dumping margins by determining such or similar merchandise, when necessary, by using the three physical criteria methodology. *Koyo Seiko Co.*, 16 CIT at ——, ——, 796 F.Supp. at 523-24. Therefore the discussion below is done in the context of the ITA's applying the three physical criteria methodology, and not the five physical criteria methodology, upon remand in this case.

■ ITA argues that Timken failed to exhaust its administrative remedies by raising this issue during the underlying investigation. While it may be true that Timken did not raise this issue below, it is certain that Koyo did and that the ITA addressed it in its *Final Results*, 55 Fed.Reg. at 22,379 (Comment 47). The fact that it was another party that raised this issue below does not prevent Timken from challenging it here. *Natural Resources Defense Council v. U.S. E.P.A.*, 824 F.2d 1146, 1151 (D.C.Cir.1987).

ITA further responds by stating that Koyo failed to submit home market sales data which used the same nomenclature as U.S. market sales data. ITA's intention was to make identical matches based on nomenclature. The use of the physical cri-

---

**6.** 19 U.S.C. § 1677a(e) states in pertinent part:
   **(e) Additional adjustments to exporter's sales price**
      For purposes of this section, the exporter's sales price shall also be adjusted by being reduced by the amount, if any, of—

   (1) commissions for selling in the United States the particular merchandise under consideration,....

teria methodology was solely for determining matches of sales of similar bearings when no identical matches could be found. ITA points out that use of the same nomenclature for both home market and U.S. sales by a respondent was required, that Koyo was given numerous opportunities to correct this problem, but that they failed to do so. AR (Pub.) Docs. 303, 322, 330, 338. As a result of the uncorrected nomenclature problem, the computer program preformed as intended, found no matches of identical sales, and proceeded where possible to make similar matches or to use constructed value.

██ ITA is granted considerable deference in "the methods it employs in administering the antidumping law." *Chemical Prods.*, 10 CIT at 628, 645 F.Supp. at 291. Here the ITA's computer instructions for matching identical sales of bearings were reasonable. The inability to find any identical matches lies with Koyo's failure to submit correctly formatted information as requested. Therefore, the ITA's use of nomenclature for matching identical sales for Koyo is sustained. ITA may use the same method on remand to identify identical sales before resorting to the use, when necessary, of the three physical criteria methodology for selecting such or similar merchandise as required in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517.

## VI. Implementation of the "Twenty Percent Cap"

Timken, the ITA and Koyo agree that this issue should be remanded to the ITA to correctly implement the use of the twenty percent cap on cost differences. NSK takes no position on this issue. This issue was decided by this Court's opinion in *Koyo Seiko Co.*, 16 CIT at —— – ——, 796 F.Supp. at 525. Therefore, the Court remands this issue to the ITA to apply the twenty percent cap on cost differences in accordance with its opinion in *Koyo*.

## VII. Antidumping Duty Assessment Cap

██ Timken argues that the antidumping duty assessment cap contained in 19 U.S.C. § 1673f(a) (1988) [7] does not apply in this case. ITA agrees and asks for a remand on this issue. Koyo disagrees. NSK takes no position on this issue.

In support of their position, Timken and the ITA rely upon this Court's decision in *Zenith Elecs. Corp. v. United States*, 15 CIT at ——, 770 F.Supp. at 652–54. The Court in *Zenith* found that the clear language of the statute, coupled with the ambiguous language of the legislative history of this provision, led to the conclusion that the duty assessment cap contained in 19 U.S.C. § 1673f(a) applies only to cash deposits of estimated dumping duties. The Court concluded that the statute does not apply to a situation where the importer

---

7. 19 U.S.C. § 1673f(a) provides:

   **(a) Deposit of estimated antidumping duty under section 1673b(d)(2) of this title**

   If the amount of a *cash deposit* collected as security for an estimated antidumping duty under section 1673b(d)(2) of this title is different from the amount of the antidumping duty determined under an antidumping duty order published under section 1673e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1673d(b) of this title is published shall be—

   (1) disregarded, to the extent the *cash deposit* collected is lower than the duty under the order, or

   (2) refunded, to the extent the *cash deposit* is higher than the duty under the order.

(emphasis added).

19 U.S.C. § 1673b(d)(2) (1988) provides in pertinent part:

**(d) Effect of determination by the administering authority**

If the preliminary determination of the administering authority under subsection (b) of this section is affirmative, the administering authority—

.    .    .    .    .

(2) shall order the posting of a cash deposit, bond, or other security, as it deems appropriate, for each entry of the merchandise concerned equal to the estimated average amount by which the foreign market value exceeds the United States price,....

19 U.S.C. § 1673d(b) (1988) provides for final injury determinations by the U.S. International Trade Commission.

posted bonds to cover estimated dumping duties. *Id.* at ——, 770 F.Supp. at 654.

In this case, the time period in question was from June 5, 1974, the date Treasury published an affirmative determination of sales at less than fair value and withholding of appraisement notice, to January 29, 1975, the date the ITC published its affirmative injury determination. *Tapered Roller Bearings From Japan. Antidumping; Withholding of Appraisement Notice,* 39 Fed.Reg. 19,969 (1974); *Tapered Roller Bearings And Certain Components Thereof From Japan. Determination of Likelihood of Injury,* 40 Fed.Reg. 4,366 (1975). The applicable law during this time period was the Antidumping Act of 1921. Antidumping Act of 1921, 42 Stat. 11 *repealed by* Trade Agreements Act of 1979, Pub.L. No. 96–39, 93 Stat. 144. The Antidumping Act of 1921 had no provision for the calculation of estimated dumping duties or for the use of a provisional assessment cap. As a result, Koyo was not required to deposit cash to cover any estimated antidumping duties.

Koyo argues that the Court's decision in *Zenith* does not apply in this case for two reasons. First, at the time of the Court's decision in *Zenith,* the ITA had not interpreted 19 U.S.C. § 1673f(a) through the promulgation of a regulation. Just prior to the Court's decision in *Zenith,* the ITA did promulgate such a regulation which applied the provisional assessment cap to both cash deposits and bonds. *See* 19 C.F.R. § 353.23 (1990) (promulgated at *Antidumping Duties Final Rule,* 54 Fed.Reg. 12,742 (March 28, 1989)). This regulation was in effect at the time the Final Results in this case were issued and was applied by the ITA.

Koyo argues that as a result of the lack of interpretation of the statute by the ITA, the Court in *Zenith* was not required to apply the deferential standard of review of an agency's construction of the statute which it implements, articulated in *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). *Chevron* requires a court to defer to an agency's "reasonable" or "permissible" interpretation of an ambiguous statute. *Id.* Koyo argues that this Court must apply the *Chevron* standard of review here and that doing so will lead the Court to disregard *Zenith* and uphold the ITA's regulation and its use here.

However, even the application of the deferential *Chevron* standard of review does not help Koyo because this Court finds the clear language of 19 U.S.C. § 1673f(a) excludes its application to situations other than those involving cash deposits. *See Zenith,* 15 CIT at ——, 770 F.Supp. at 652–53. The fact that the ITA promulgated a regulation, which it now informs the Court it intends to repeal, which supports Koyo's position is insufficient grounds for this Court to uphold the regulation and disregard this Court's decision in *Zenith* if the regulation is clearly inconsistent with the language of the underlying law. *See Melamine Chems., Inc. v. United States,* 732 F.2d 924, 928 (Fed.Cir.1984).

Koyo also argues that this Court's decision in *Zenith* is flawed because the Court relied on an incorrect version of the GATT Antidumping Code ("Code").[8] Even if the Court in *Zenith* incorrectly interpreted the Code, this would still be insufficient grounds to go beyond the clear language of this statutory provision. Even though one of the main purposes of the Trade Agreements Act of 1979 was to implement the results of the GATT Tokyo Round Negotiations, provisions of the Code are "clearly hortatory rather than mandatory." *Timken III,* 14 CIT at ——, Slip Op. 90–117 at 12.

Therefore, this Court chooses to follow *Zenith* and finds that 19 U.S.C. § 1673f(a) does not apply in the absence of cash deposits and remands this issue back to the ITA to eliminate the application of the provisional assessment cap.

---

**8.** The GATT Antidumping Code is a multilateral agreement endorsed by the United States in 1979 during the course of the General Agreement on Tariffs and Trade's Tokyo Round of Multilateral Trade Negotiations. Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (1979), 26 BISD 171 (GATT March 1980).

*Conclusion*

In accordance with this opinion, this proceeding is remanded to the International Trade Administration for recalculation of the dumping margins using Koyo's verified per-unit export department expenses as best information available in the calculation of Koyo's export selling expenses, for application of the twenty percent cost cap in accordance with this Court's opinion in *Koyo Seiko Co. v. United States*, 16 CIT ——, 796 F.Supp. 517 (1992), and for the ITA to instruct the U.S. Customs Service not to apply the provisional duty assessment cap to entries made between June 5, 1974 and January 29, 1975. Furthermore, to the extent the use of best information available is necessary after the recalculation of the dumping margins required by this Court's opinions in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517, and *NSK Ltd. v. United States*, 16 CIT ——, 794 F.Supp. 1156 (1992), the ITA's choice of best information available for information not provided by Koyo necessary to split bearing components in order to compare similar merchandise, for information not provided by Koyo on variable costs of manufacture, for Koyo's missing aftermarket sales information, and for information which NSK failed to provide regarding requested physical criteria data for certain U.S. sales is sustained. Also, to the extent an adjustment to constructed value for differences in circumstance of sale is necessary during the recalculation of the dumping margin as required in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517, the ITA's adjustment of constructed value for differences in circumstance of sale, and the ITA's method of calculating that adjustment are sustained. ITA's decision not to deduct importer's profit from ESP is also sustained. Finally, the ITA's programming instructions using only nomenclature for matching sales of identical bearings in the home and U.S. markets for Koyo is sustained. ITA may use the same method on remand to identify identical sales before resorting to the use, when necessary, of the three physical crite-

ria methodology for selecting such or similar merchandise required in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517. ITA shall report the results of the remand determination to this Court within ninety (90) days of the date the opinion is entered.

PARTIAL JUDGMENT UNITED STATES COURT OF INTERNATIONAL TRADE

This case having been duly submitted for decision following plaintiff's motion for judgment on the agency record, and the Court, after due deliberation, having rendered a decision herein; now therefore, in accordance with said decision,

IT IS HEREBY ORDERED that plaintiff's motion is granted in part and this case is remanded to the Department of Commerce, International Trade Administration ("ITA"), for recalculation of the dumping margins using Koyo's verified per-unit export department expenses as best information available in the calculation of Koyo's export selling expenses, for application of the twenty percent cost cap in accordance with this Court's opinion in *Koyo Seiko Co. v. United States*, 16 CIT ——, 796 F.Supp. 517 (1992), and for the ITA to instruct the U.S. Customs Service not to apply the provisional duty assessment cap to entries made between June 5, 1974 and January 29, 1975; and it is further

ORDERED that to the extent the use of best information available is necessary during the recalculation of the dumping margins required by this Court's opinions in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517, and *NSK Ltd. v. United States*, 16 CIT ——, 794 F.Supp. 1156 (1992), the ITA will use best information available in accordance with the guidelines set forth in this opinion; and it is further

ORDERED that to the extent an adjustment to constructed value for differences in circumstance of sale is necessary during the recalculation of the dumping margin as required in *Koyo Seiko Co.*, 16 CIT ——, 796 F.Supp. 517, the ITA will adjust con-

structed value for differences in circumstance of sale in accordance with the guidelines set forth in this opinion; and it is further

ORDERED that all of ITA's other actions are sustained; and it is further

ORDERED that Commerce shall report the results of the remand to this Court within ninety (90) days of the date this judgment is entered.